**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| DAVID DALE RAMEY, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | 1:12CV1036 |
| ) | |
| REUBEN F. YOUNG, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

**Auld, Magistrate Judge**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 2.) On March 26, 2010, in the Superior Court of Forsyth County, a jury found Petitioner guilty of two counts of second-degree rape, four counts of sex offense by a person in a parental role, three counts of incest, and taking indecent liberties with a child, in cases 09 CRS 51314, 51315, 52891 and 52892. (Docket Entry 2, ¶¶ 1, 2, 4-6; see also Docket Entry 7-4 at 35-39.)[1] The trial court sentenced Petitioner to two consecutive terms of 92 to 120 months for the second-degree rape convictions, two consecutive terms of 31 to 47 months on the sex offense - parental role convictions, and two consecutive terms of 20 to 24 months for the incest and indecent liberties convictions. (Docket Entry 2, ¶ 3; see also Docket Entry 7-5 at 2-31.)

---

[1] For attachments to Respondent's memorandum in support of his instant Motion for Summary Judgment, pin citations refer to the page number in the footer appended to said document by the CM/ECF system.

Petitioner appealed his convictions (see Docket Entry 2, ¶¶ 8, 9; see also Docket Entry 7, Exs. 1, 3-5), and the North Carolina Court of Appeals affirmed Petitioner's rape, sex offense and indecent liberties convictions, but remanded Petitioner's incest convictions for re-sentencing based upon the trial court's erroneous reliance at sentencing on the aggravating factor set forth in N.C. Gen. Stat. § 15A-1340.16(d)(15) (authorizing trial court to find as an aggravating factor that "defendant took advantage of a position of trust or confidence, including a domestic relationship, to commit the offense"). State v. Ramey, No. COA10-1197, 2011 N.C. App. LEXIS 1650, at *19-20 (Aug. 2, 2011) (unpublished). Petitioner thereafter submitted a pro se Notice of Appeal and Petition for Discretionary Review (which also contained a request to appoint counsel) to the North Carolina Supreme Court (Docket Entry 2, ¶ 9(g); see also Docket Entry 7, Ex. 6), which he dated as signed on August 30, 2011 (Docket Entry 7, Ex. 6 at 15-16), and which the Supreme Court stamped as filed on September 1, 2011 (id. at 2). On October 6, 2011, the Supreme Court dismissed the notice of appeal ex mero motu and denied the petition for discretionary review ("PDR"). State v. Ramey, 365 N.C. 354, 718 S.E.2d 147 (2011). On the same date, that court dismissed as moot Petitioner's request to appoint counsel. State v. Ramey, 365 N.C. 354, 718 S.E.2d 155 (2011). Petitioner did not then submit a petition for a writ of certiorari to the United States Supreme Court. (Docket Entry 2, ¶ 9(h).)

Petitioner subsequently submitted his Petition in this Court (Docket Entry 2), which he dated as signed on September 13, 2012 (id. at 19, 24),[2] and which the Court stamped as filed on September 17, 2012 (id. at 1). Respondent moved for summary judgment on the merits. (Docket Entry 6.) In response, Petitioner filed documents entitled "Motion for Denial of Summary Judgment, Renewal of Motion for Appointment of Counsel" and "Response to Motion for Summary Judgment, and Supporting Brief," and a sealed document in support, all of which the Clerk of Court docketed as responses in opposition to Respondent's instant summary judgment motion. (Docket Entries 10-12.) The parties have consented to disposition of this case by a United States Magistrate Judge. (See Docket Entry 14.)

## Facts

The facts of the case, as set out in the North Carolina Court of Appeal's decision in Petitioner's case, are as follows:

I. Factual Background

A. Substantive Facts

> M.Y. was born on 12 April 1991.[1] Martha's mother, Tanya Ramey, began dating [Petitioner] in 2003. Martha was introduced to [Petitioner] when she was approximately twelve years old. [Petitioner] and Ms. Ramey moved in together in 2004 and married in 2005. Shortly after their marriage, [Petitioner] and Ms. Ramey moved from California to Forsyth County, where [Petitioner], Ms. Ramey, and Martha lived together as a family for approximately three years.

FOOTNOTES

---

[2] For portions of the Petition lacking paragraph numbers, pin citations refer to the page number in the footer appended to said document by the CM/ECF system.

¹ "Martha" is a pseudonym which we will utilize throughout the remainder of this opinion for ease of reading and in order to protect M.Y.'s privacy.

Martha testified that she and [Petitioner] engaged in sexual intercourse on numerous occasions during 2007, 2008, and 2009, having been about 16 when this series of events began. According to Martha, both she and [Petitioner] initiated these instances of sexual intercourse on occasion; however, Martha claimed that [Petitioner] initiated these encounters more often than she did. Martha stated that she never refused [Petitioner]'s overtures because she was "afraid he might do something worse" "like . . . beat [her] or something," that the situation made her sad, and that she was "tired of [[Petitioner]] doing that to [her]."

In January of 2009, Ms. Ramey discovered that Martha was pregnant. Although Martha initially said that she did not know who the father was, she later asserted that [Petitioner] was the father. Subsequently, Martha retracted this statement, indicating that an unnamed "boy at school" had fathered the child instead. After Ms. Ramey and Martha agreed that Martha was "too young and too immature to take care of a baby," they decided that Martha's pregnancy should be terminated.

On 3 February 2009, Ms. Ramey went to work early. As a result of that fact and the fact that school had been delayed for several hours due to inclement weather, Ms. Ramey requested that [Petitioner] help Martha get ready for school. After Ms. Ramey's departure, [Petitioner] entered Martha's bedroom and informed her of the delay. Although Martha told [Petitioner] that she wanted to "get some extra sleep," the two of them proceeded to engage in intercourse.

After engaging in sexual intercourse, [Petitioner] and Martha got into a fight over Martha's refusal to bathe before going to school. During this altercation, [Petitioner] grabbed Martha by the arm and pulled her into the dining area. Although Martha asked [Petitioner] to release her, [Petitioner] refused to honor Martha's request and pushed her.

At the time that Martha got to school, she was visibly upset. After being asked what was wrong, Martha told a friend about the sexual nature of her relationship with [Petitioner]. Later, Martha told a school resource officer, several police officers, and various other

-4-

persons at the local hospital about the nature of her relationship with [Petitioner].

As a result of Martha's accusations, an investigation was conducted into the nature of [Petitioner]'s relationship with Martha. As part of this investigation, the residence in which [Petitioner], Ms. Ramey, and Martha resided was searched by law enforcement officers. During this search, investigating officers discovered forensic evidence indicating that [Petitioner] and Martha had engaged in sexual intercourse.

After agreeing to accompany investigating officers to the Forsyth County Sheriff's Office and voluntarily agreeing to answer questions, [Petitioner] confessed to having had an unlawful sexual relationship with Martha and was placed under arrest shortly thereafter. The following day, [Petitioner] reaffirmed the substance of his confession during a conversation with Bobbietta Adams of the Forsyth County Department of Social Services, admitting to Ms. Adams that he had been having intercourse with Martha for approximately eighteen months and had impregnated her.

B. Procedural Facts

On 6 July 2009, the Forsyth County grand jury returned bills of indictment charging [Petitioner] with two counts of second degree rape, four counts of committing a sex offense while occupying a parental role, three counts of committing incest in violation of N.C. Gen. Stat. § 14-178(b)(3), one count of committing incest in violation of N.C. Gen. Stat. § 14-178(b)(1)b, one count of statutory rape, and one count of taking indecent liberties with a child. The charges against [Petitioner] came on for trial before the trial court and a jury at the 22 March 2010 criminal session of the Forsyth County Superior Court. At the conclusion of the State's evidence, the trial court dismissed the cases in which [Petitioner] had been charged with committing incest in violation of N.C. Gen. Stat. § 14-178(b)(1)b and statutory rape.

On 26 March 2010, the jury returned verdicts finding [Petitioner] guilty of all the remaining charges that had been lodged against him. In addition, the jury found two statutory aggravating factors: that [Petitioner] took advantage of a position of trust or confidence in order to commit the offenses and that Martha was "mentally infirm." At the ensuing sentencing hearing, the trial court found that [Petitioner] had no prior record and

-5-

Case 1:12-cv-01036-LPA-LPA   Document 15   Filed 09/19/13   Page 5 of 16

>   should be sentenced as a Level I offender. Based on these determinations, the trial court sentenced [Petitioner] to consecutive sentences of a minimum term of 92 months and a maximum term of 120 months imprisonment based upon his conviction for second degree rape in File No. 09 CRS 51314, a minimum term of 92 months and a maximum term of 120 months imprisonment based upon his conviction for second degree rape in File No. 09 CRS 51315, a minimum term of 31 months and a maximum term of 47 months imprisonment based upon his conviction for committing a sex offense while occupying a parental role in File Nos. 09 CRS 51314 and 51315, a minimum term of 31 months and a maximum term of 47 months imprisonment based upon his convictions for committing a sex offense while occupying a parental role in File 09 CRS 52892, a minimum term of 20 months and a maximum term of 24 months imprisonment based upon his convictions for incest in File Nos. 09 CRS 51314, 51315, and 52892, and a minimum term of 20 months and a maximum term of 24 months imprisonment based upon his conviction for taking indecent liberties with a child in File No. 09 CRS 52891, with all sentences to be served in the custody of the North Carolina Department of Correction.

Ramey, 2011 N.C. App. Lexis 1650, at *2-8 (internal citations to the transcript omitted).

### **Petitioner's Claims**

Petitioner raises three claims for relief in his Petition: (1) the trial court violated Petitioner's federal and state constitutional and state statutory rights by admitting the testimony of Aretha Moultrie regarding the victim's mental abilities, I.Q., and cognitive age, because the testimony constituted inadmissible hearsay, lacked a proper foundation, and went beyond the parameters of lay opinion testimony; (2) Petitioner's trial counsel provided ineffective assistance because counsel failed to object to Ms. Moultrie's testimony regarding the victim's mental abilities and cognitive age; and (3) Petitioner's trial counsel provided ineffective assistance because counsel

-6-

failed to properly research and introduce evidence of the victim's mental abilities. (Docket Entry 2 at 6, 7-8, 9-10.)

## **Standard of Review**

Where a state trial court adjudicated a petitioner's claims on their merits, this Court must apply 28 U.S.C. § 2254(d)'s highly deferential standard of review to such claims. That statute precludes habeas relief in cases where a state court has considered a claim on its merits unless the decision was contrary to or involved an unreasonable application of clearly established federal law as set out by the United States Supreme Court or the state court decision was based on an unreasonable determination of the facts. A state court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. Williams v. Taylor, 529 U.S. 362, 406 (2000). A state decision "involves an unreasonable application" of Supreme Court law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407. "Unreasonable" does not mean simply "incorrect" or "erroneous" and the Court must judge the reasonableness of the state court's decision from an objective, rather than subjective, standpoint. Id. at 409-11. Finally, state court findings of fact

are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## Discussion

### I. Claims One and Two[3]

In Claim (1), Petitioner alleges that the trial court violated the Sixth and Fourteenth Amendments to the United States Constitution, Sections 19, 24, 36 and 37 of Article 1 of the North Carolina Constitution, and North Carolina Rules of Evidence 702, 703 and 803 by admitting the testimony of Aretha Moultrie[4] regarding the victim's mental abilities, I.Q., and cognitive age. (Docket Entry 2 at 6.) Petitioner contends that Ms. Moultrie's testimony constituted inadmissible hearsay and "lacked a proper foundation." (Id.) In addition, Petitioner asserts that Ms. Moultrie was not qualified as an expert witness and "[h]er testimony went beyond the proper parameters of lay opinion testimony." (Id.)

As an initial matter, to the extent Petitioner's Claim (1) relies upon violations of a state constitution and state statutes, it is not cognizable on federal habeas review. See Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("We have stated many times that 'federal habeas corpus does not lie for errors of state law.'" (citing Lewis v. Jeffers, 497 U.S. 764, 780 (1990)). Turning to

---

[3] Petitioner's Claims (1) and (2) are interrelated and, thus, the Court will analyze them together.

[4] Ms. Moultrie is an exceptional children's case manager with the Forsyth County School System and served as the victim's case manager. Ramey, 2011 N.C. App. LEXIS 1650, at *9-10.

-8-

Petitioner's federal constitutional grounds for Claim (1), Petitioner has not fully exhausted his state remedies. In his direct appeal, although Petitioner raised an argument in the North Carolina Court of Appeals with a heading nearly identical to his instant Claim (1) (<u>compare</u> Docket Entry 7, Ex. 4 at 6, <u>with</u> Docket Entry 2 at 6), in the body of that argument, Petitioner did not include any analysis based on the federal constitution, nor did he cite to any federal case law in support of the federal constitutional aspects of his claim. (Docket Entry 7, Ex. 4 at 10-25.)

Under such circumstances, Petitioner has failed to sufficiently exhaust his state remedies with respect to the federal constitutional bases of Claim (1). <u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004) (holding that petitioner must fully and fairly present all his federal claims to each level of review in the state system); <u>Longworth v. Ozmint</u>, 377 F.3d 437, 448 (4th Cir. 2004) (finding that petitioner must place "both the operative facts and the controlling legal principles" before the state courts); <u>Hiivala v. Wood</u>, 195 F.3d 1098, 1106-07 (9th Cir. 1999) (recognizing that "general appeals to broad constitutional principles[] such as due process" and the "mere similarity between a claim of state and federal error" does not suffice); <u>Adelson v. DiPaola</u>, 131 F.3d 259, 262-64 (1st Cir. 1997) (concluding that "mere incantation of constitutional buzzwords, unaccompanied by any federal

constitutional analysis, does not suffice to carry the burden of demonstrating fair presentment of a federal claim").[5]

In his PDR to the North Carolina Supreme Court, Petitioner did include some federal constitutional analysis when he argued the substance of Claim (1) to that court. Petitioner argued that the trial court's admission of Ms. Moultrie's testimony regarding the victim's out-of-state records without his having an opportunity to cross-examine the creator or custodian of those records violated the Confrontation Clause of the Sixth Amendment to the federal constitution and the holding of Crawford v. Washington, 541 U.S. 36 (2004). (Docket Entry 7, Ex. 6 at 9-14.) However, Petitioner's inclusion of federal constitutional analysis in his PDR, given the absence of such analysis in his arguments to the North Carolina Court of Appeals, does not suffice to fairly present his federal claim to the state courts for adjudication on the merits. See Castille v. Peoples, 489 U.S. 346, 351 (1989) (holding that where a petitioner raised a claim for the first time to state's highest court on discretionary review, the petitioner did not fairly present the claim to state courts for exhaustion purposes); Felton v. Barnett, 912 F.2d 92, 94-95 (4th Cir. 1990) (recognizing that denial of certiorari petition to North Carolina Supreme Court is not judgment on the merits but simply "refusal to hear the appeal").

---

[5] The record before the Court does not indicate that Petitioner filed a motion for appropriate relief ("MAR") with the state trial court collaterally attacking his convictions or sentences. (See Docket Entry 2, ¶ 11.)

-10-

Even if Petitioner now filed a MAR raising the federal claim he purports to assert in the instant Petition, a procedural bar would arise under N.C. Gen. Stat. § 15A-1419(a)(3) and (b), which provides for the denial of a claim when a defendant had an adequate opportunity to raise it in a prior appeal but did not do so, absent "good cause" and "actual prejudice" or "a fundamental miscarriage of justice." In his materials in response to Respondent's instant summary judgment motion, Petitioner makes no _direct_ argument that cause exists for his failure to raise his federal claim in the Court of Appeals, nor does he state any facts that come close to establishing that the Court's failure to entertain this claim on its merits would result in a "fundamental miscarriage of justice." (See Docket Entries 10-12.) However, Petitioner argues in Claim (2) that his trial counsel provided ineffective assistance in violation of the Sixth Amendment of the federal constitution and Section 23 of Article 1 of the North Carolina Constitution[6] by failing to "interpose timely objections to Ms. Moultrie's testimony about [the victim's] mental abilities and 'cognitive age.'" (Docket Entry 2 at 7.)[7] Constitutionally ineffective assistance of

---

[6] As discussed above, the state constitutional aspects of Claim (2) are not cognizable on federal habeas review. See Estelle, 502 U.S. at 67.

[7] Petitioner makes no argument that his appellate counsel provided ineffective assistance by failing to argue the federal constitutional aspects of Claim (1) on direct appeal. The absence of this federal argument in Petitioner's appellate brief caused the procedural default of Claim (1). As such, doubt exists that trial counsel's failure to object to Ms. Moultrie's testimony could constitute cause for the procedural default of Claim (1), where trial counsel's alleged failure did not prevent the Court of Appeals from reviewing the merits of Claim (1) under a plain error standard of review. Ramey, 2011 N.C. App. Lexis 1650, at *11-16. Nevertheless, giving Petitioner the benefit of the doubt, the Court will consider whether trial counsel's alleged ineffective assistance
(continued...)

-11-

counsel amounts to cause to excuse a procedurally defaulted claim, see Coleman v. Thompson, 501 U.S. 722, 753-54 (1991); Murray v. Carrier, 477 U.S. 478, 488 (1986), and, thus, the Court must analyze Petitioner's Claim (2) in order to fully determine whether grounds for excusing the procedural default of Claim (1) exist.

The North Carolina Court of Appeals adjudicated and denied the substance of Claim (2) on its merits as follows:

> [Petitioner] argues that he was deprived of his constitutionally protected right to the effective assistance of counsel as a result of his trial counsel's failure to interpose timely objections to the portion of Ms. Moultrie's testimony that related to Martha's mental abilities. We disagree.
>
>> To successfully assert an ineffective assistance of counsel claim, defendant must satisfy a two-prong test. First, he must show that counsel's performance fell below an objective standard of reasonableness. Second, once defendant satisfies the first prong, he must show that the error committed was so serious that a reasonable probability exists that the trial result would have been different absent the error.
>
> State v. Blakeney, 352 N.C. 287, 307-08, 531 S.E.2d 799, 814-15 (2000) (citing Strickland v. Washington, 466 U.S. 668, 687, 691-96, 80 L. Ed. 2d 674, 693, 696-99, 104 S. Ct. 2052, 2064, 2067-69 (1984) and State v. Braswell, 312 N.C. 553, 561-62, 324 S.E.2d 241, 248 (1985)), cert. denied, 531 U.S. 1117, 148 L. Ed. 2d 780, 121 S. Ct. 868 (2001). Thus, "[t]he fact that counsel made an error, even an unreasonable error, does not warrant reversal of a conviction unless there is a reasonable probability that, but for counsel's errors, there would have been a different result in the proceedings." Braswell, 312 N.C. at 563, 324 S.E.2d at 248 (citing Strickland, 466 U.S. at 691, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068). In light of the overwhelming evidence tending to show the extent of Martha's mental disability, the nature of which is described in detail above, we do not believe that there

---

[7](...continued)
constitutes cause to excuse the procedural default of Claim (1).

-12-

> is a reasonable probability that, even if [Petitioner]'s trial counsel had lodged timely objections to the challenged portion of Ms. Moultrie's testimony and those objections had been sustained, the outcome of [Petitioner]'s trial would have been different. As a result, we conclude that [Petitioner]'s ineffective assistance of counsel claim lacks merit.

Ramey, 2011 N.C. App. Lexis 1650, at *16-17.

As the state court fully adjudicated this claim on the merits, this Court must apply 28 U.S.C. § 2254(d)'s highly deferential standard of review to the Court of Appeals' analysis under Strickland. As this Court has recently recognized, "[w]here the issue is whether the state court has unreasonably applied Strickland standards to a claim of ineffective assistance of counsel, . . . " 'double deference' is required — deference to the state court judgment granting deference to trial counsel's performance." Lavandera-Hernandez v. Terrell, No. 1:12-cv-553, 2013 WL 1314721, at *4 (M.D.N.C. Mar. 28, 2013) (Schroeder, J.) (unpublished) (citing Burr v. Lassiter, No. 12-4, 2013 WL 871190, at *12 (4th Cir. Mar. 11, 2013) (unpublished)). As the United States Supreme Court emphasized, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington v. Richter, ___ U.S. ___, ___, 131 S. Ct. 770, 788 (2011).

Under this standard, the Court of Appeals' analysis of the claim was neither contrary to, nor an unreasonable application of clearly established United States Supreme Court precedent. The Court of Appeals correctly applied Strickland to assess

-13-

Petitioner's ineffective assistance claim.  Furthermore, in its opinion, the Court of Appeals detailed at length the evidence admitted at trial which demonstrated the victim's mental deficiencies.  Ramey, 2011 N.C. App. Lexis 1650, at *14-16.  Even assuming for argument's sake that trial counsel's failure to sufficiently object to Ms. Moultrie's testimony fell below an objective standard of reasonableness, the Court of Appeals reasonably concluded based on the record evidence that, given the overwhelming evidence of the victim's mental disability, no reasonable probability existed that the outcome of Petitioner's trial would have changed.

Thus, Claim (2) fails as a matter of law.  Further, Petitioner's ineffective assistance claim falls short even when analyzed without the deference required by § 2254(d) and (e), because in light of the overwhelming evidence connecting him to the robbery, Petitioner simply cannot show prejudice arising from his trial counsel's allegedly deficient performance.  Thus, Petitioner cannot rely on this alleged ineffective assistance as cause to excuse the procedural default relating to Claim (1).  Similarly, Petitioner cannot demonstrate sufficient prejudice to excuse his procedural default.  Accordingly, Claim (1) is procedurally defaulted and barred from federal review.

## II. Claim Three

In his third claim, Petitioner contends that he received ineffective assistance of his trial counsel in violation of the federal and North Carolina constitutions because counsel failed to

-14-

"properly research and introduce evidence that would have caused the defendant to be found not guilty of the second degree rape" charges. (Docket Entry 2 at 9.)[8] In particular, Petitioner attached to the instant Petition a medical release and an authorization for treatment signed by the victim (id. at 11, 12) and argues that these documents demonstrate that the victim "was fully able to read, comprehend, and sign official medical documents in the presence of witnesses" (id. at 10). Petitioner claims that his counsel's failure to introduce this evidence constituted ineffective assistance. (Id.)

As an initial matter, Petitioner has not exhausted his state remedies with respect to this claim, as he did not raise it on direct appeal and has not filed a MAR with the state courts. Notwithstanding Petitioner's failure to exhaust his state remedies, this Court will proceed to consider Petitioner's Claim (3) on its merits. See 28 U.S.C. § 2254(b)(2).

Petitioner's Claim (3) fails to satisfy either prong of the Strickland test. First, Petitioner has not shown that counsel's failure to introduce at trial the documents attached to the Petition constitutes performance that fell below an objective standard of reasonableness. The documents merely bear the victim's signature and do not appear to reflect any other written input from her. (Docket Entry 2 at 11-12.) Based on the documents alone, one cannot even conclude whether the victim read the documents herself

---

[8] Again, the portion of Petitioner's Claim (3) based on violation of the North Carolina Constitution is not cognizable on federal habeas review. See Estelle, 502 U.S. at 67.

-15-

or had another individual explain the information on the forms to her. (Id.)  The dubious significance of these documents pales in comparison to the extensive evidence of the victim's mental disability introduced during the trial and detailed by the Court of Appeals in its opinion, and counsel's failure to introduce such documents does not constitute a professional dereliction.  For the same reasons, Petitioner has not shown a reasonable probability that introduction of these documents by counsel would have led to a different trial outcome.

Claim (3) thus lacks merit.

**IT IS THEREFORE ORDERED** that Respondent's Motion for Summary Judgment (Docket Entry 6) is **GRANTED,** that the Petition (Docket Entry 2) is **DENIED,** and that this action is **DISMISSED** pursuant to a contemporaneously entered judgment.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

September 19, 2013